**In re Anonymous No. 93 D.B. 87**

Disciplinary Board Docket no. 93 D.B. 87

SCHILLER, *Member*, December 13, 1989 — On November 7, 1985, the Office of Disciplinary Counsel sent respondent, [   ], a DB-7 letter concerning possible Disciplinary Rule violations respondent may have committed in the course of his representation of [A]. On December 2, 1985, respondent replied to petitioner's letter and denied any Disciplinary Rule violations.

On December 16, 1987, the Office of Disciplinary Counsel filed a petition for discipline charging respondent with various Disciplinary Rule violations in the course of his representation of complainant

[A]. Respondent filed an answer to the petition for discipline on January 5, 1989. In his answer, respondent denied any Disciplinary Rule violations. Respondent also filed various motions to dismiss which were dismissed without prejudice by order dated April 22, 1989.

On May 3, 1989, oral argument was heard before Hearing Committee [    ], consisting of chairperson [    ], Esq., and members [    ], Esq. and [    ], Esq. On August 28, 1989, the hearing committee filed its report. The committee recommended dismissal of the charges against respondent and granted respondent's motion to dismiss the charges against him.

On September 18, 1989, petitioner filed a brief in support of exceptions to the report of Hearing Committee [    ]. On October 5, 1989, respondent filed a brief in opposition to petitioner's exceptions.

Pursuant to Disciplinary Board Rule 89.201(b), oral argument was heard before a three-member review panel of the Disciplinary Board. At its October 24, 1989 board meeting, the immediate matter was adjudicated and the charges against respondent were dismissed.

## FINDINGS OF FACT

(1) The immediate matter stems from respondent's 1983 to 1984 representation of [A] in a criminal matter.

(2) Respondent has been a criminal defense attorney in the [    ] area since 1970.

(3) [A] had been charged with involuntary manslaughter and homicide by vehicle as a result of a July 20, 1983 motor vehicle accident.

(4) On September 29 or 30, 1983, respondent was retained by [A] to represent him in the aforementioned matter.

(5) Respondent arranged for [A's] surrender to the proper authorities on October 3, 1983.

(6) Respondent made handwritten notes at his initial meeting with [A] and supplemented these writings with information garnered at subsequent meetings.

(7) During respondent's initial meeting with [A], he learned that [A] has been placed on accelerated rehabilitative disposition as the result of a 1982 assault conviction.

(8) In the course of his representation of [A], respondent represented to the court that [A's] only past conviction was the 1982 assault conviction.

(9) In 1975, [A] was convicted in the North Carolina United States District Court of armed robbery on a military reservation in North Carolina, in violation of U.S.C. §2111. [A] was sentenced to eight years of incarceration in a federal prison for this offense.

(10) In September 1980, [A] was paroled.

(11) On July 20, 1983, through November 8, 1984, [A] received federal supervision as part of his parole status.

(12) Beginning August 30, 1983, [A] was under the supervision of [B], a U.S. Parole Officer in the [ ] U.S. Parole Office.

(13) On November 21, 1983, respondent appeared before the Honorable [C] of the Municipal Court of the [ ] Court of Common Pleas with and on behalf of [A]. Respondent entered a plea of guilty on behalf of [A] to two counts of homicide by vehicle at this appearance.

(14) The court had before it at this time a pre-sentence investigation of [A], dated November 17, 1983, which indicated that [A's] 1982 assault and resisting arrest conviction (and subsequent ARD) were his only prior criminal offenses.

(15) A pre-sentence investigation of [A] was conducted on or about December 2, 1983, at which time [A] received a prior record score of zero based upon his 1982 conviction.

(16) On December 6, 1983, Judge [C] sentenced [A] to two and one-half to five years in the state correctional institution, sentence suspended, and two years non-reporting probation, in compliance with established sentencing guidelines.

(17) On December 9, 1983, the assistant district attorney, who had not been present at [A's] December 6, 1983 sentencing, filed a petition to reconsider sentence in light of newly discovered evidence of respondent's 1975 conviction.

(18) Judge [C] entered a rule to show cause and order to vacate on December 9, 1983.

(19) On February 2, 1984, a hearing on the petition to reconsider sentence was held before Judge [C]. Respondent appeared on [A's] behalf at this hearing.

(20) Respondent met probation officer [B] for the first time at the February 2, 1984 hearing. Respondent had, however, spoken with [B] earlier on the telephone concerning [A], whom he believed to be under federal supervision because of his status as a wounded Vietnam War veteran.

(21) [A] received a sentence of two to four years in the [ ] Correctional Facility, five years of non-reporting probation, and lifetime suspension of his driving privileges at the February 2, 1984 hearing. The court indicated that the stiffer new sentence was the result of its newfound knowledge of [A's] 1975 conviction.

(22) [A] subsequently discharged respondent as his counsel in this matter, and retained the services of [D] on February 6, 1984.

(23) On February 9, 1984, [D] filed a petition to modify sentence and a petition to withdraw guilty plea on [A's] behalf.

(24) A hearing was held on [A's] petitions before Judge [C] on April 18, 1984.

(25) Respondent testified under oath before Judge [C] at the April 18, 1984 hearing that he had no knowledge of [A's] 1975 conviction until the District Attorney's Office filed its petition to reconsider sentence. [A] testified at the hearing that respondent did in fact have knowledge of the 1975 conviction but advised [A] to withhold such information from the court.

(26) [A's] petition to withdraw guilty plea was denied and his sentence was reinstated at the April 18, 1984 hearing.

(27) [A] timely appealed Judge [C's] sentencing and order of April 18, 1984. The Honorable [E] of the Court of Common Pleas of [   ] affirmed the conviction, denied [A's] petition to withdraw guilty plea, and remanded the case to the municipal court for sentencing because lifetime suspensions of one's driving privileges is outside the scope of that court's jurisdiction.

(28) A timely appeal of Judge [E's] order was taken to the Superior Court on March 4, 1985.

(29) [A] then withdrew his appeal, although it was reinstated by his counsel and upheld on appeal. The Superior Court's opinion specifically addressed the issue of whether respondent had knowledge of [A's] 1975 conviction at the time he advised [A] to enter his guilty plea. The court resolved this issue of credibility in favor of respondent, finding he was unaware of [A's] 1975 conviction. The Pennsylvania Supreme Court denied review of [A's] sentence.

(30) [A] was resentenced in accordance with the sentencing guidelines and served the term of his

sentence. He was subsequently remanded to federal custody and is serving the balance of his federal conviction for armed robbery.

The Office of Disciplinary Counsel's petition for discipline charged that, in the course of his representation of [   ], respondent violated the following Disciplinary Rules:

(a) D.R. 1-102(A)(4) — which prohibits an attorney's engagement in dishonest, fraudulent, or deceitful conduct or misrepresentation;

(b) D.R. 1-102(A)(5) — which prohibits an attorney from engaging in conduct which is prejudicial to the administration of justice;

(c) D.R. 1-102(A)(6) — which prohibits an attorney's participation in conduct adversely reflecting on one's fitness to practice law;

(d) D.R. 7-102(A)(3) — which prohibits an attorney from concealing or knowingly failing to disclose that which he is required by law to reveal;

(e) D.R. 7-102(A)(4) — which prohibits an attorney's knowing use of perjured testimony or false evidence;

(f) D.R. 7-102(A)(5) — which prohibits an attorney from knowingly making a false statement of law or fact in the course of his representation of a client.

(g) D.R. 7-102(A)(6) — which prohibits an attorney's participation in the creation or preservation of evidence the attorney knows, or should know, is false; and

(h) D.R. 7-102(A)(7) — which prohibits an attorney from counseling or assisting the client in conduct known by the attorney to be illegal or fraudulent.

## CONCLUSIONS OF LAW

(1) Petitioner is empowered by rule 207 of the Pennsylvania Rules of Disciplinary Enforcement to

investigate alleged attorney misconduct of attorneys licensed to practice law in Pennsylvania. Petitioner has the power and the duty to prosecute those attorneys whose conduct violates Pennsylvania Disciplinary Rules.

(2) Respondent is an attorney who was born in 1939 and admitted to practice law in Pennsylvania in 1966.

## DISCUSSION

The gravamen of petitioner's complaint is that respondent, in the course of his representation of [A], counseled and assisted his client in misrepresentation of [A's] criminal history to the court. Petitioner further avers that respondent perpetuated this misrepresentation of [A's] criminal history by lying under oath while testifying at [A's] April 18, 1984 resentencing hearing.

The issue before the board is whether respondent engaged in misrepresentations of [A's] past conviction record in the course of his representation of [A], and subsequently while testifying before Judge [C]. We must determine whether we should re-examine respondent's conduct in the course of his representation of [A] or defer to our state court's exhaustive findings on respondent's credibility in this matter.

This unique factual situation presents a case of first impression for the Disciplinary Board. However, the instant case is not without analogy. In the case of *Alberici v. Tinari*, 374 Pa. Super. 20, 542 A.2d 127 (1988), the Pennsylvania Superior Court held that an unsuccessful ineffective assistance of counsel claim bars a subsequent malpractice case against the same attorney.

In the instant matter, petitioner wishes to reopen the question of whether respondent was aware of

his client's entire criminal history at the time he represented to the court that his client had a limited conviction record. The question of respondent's knowledge of [A's] criminal background has already been litigated extensively in the state courts.

[A] first raised the issue at his April 18, 1984 hearing before Judge [C], at which time he charged that he had entered his guilty plea in accordance with respondent's advice in light of his past criminal record. Judge [C] found in respondent's favor, deciding that respondent had no knowledge of [A's] 1975 conviction before evidence of the conviction was procured by the District Attorney's Office in December 1983. This ruling was upheld by Court of Common Pleas of [ ] Judge [E].

Respondent's lack of knowledge about [A's] entire criminal record was reiterated by the Superior Court: "trial court found as fact that trial counsel did not tell appellant to lie; in fact, trial counsel did not know about the prior conviction." The Pennsylvania Supreme Court subsequently refused to hear [A's] appeal on his petitions.

Now petitioner requests that the Disciplinary Board reconsider whether respondent knowingly misstated his client's conviction record to a court of law. Although the instant matter is not a civil lawsuit, the overriding considerations are the same as those faced by the *Alberici* court. The board has as its purpose the enforcement of the Disciplinary Rules which govern attorney conduct in the Commonwealth of Pennsylvania. The board has a duty to enforce these rules and prosecute those who violate them. However, the board also bears the responsibility of taking notice of prior court proceedings involving the identical issue and the same attorney. Judicial economy and a need for continuity within our state legal system are crucial.

The court in *Alberici* declined to relitigate the same issues between the same parties as a civil lawsuit when the issues had already been determined under the stricter criminal court standards. In the instant matter, the question of when respondent became aware of [A's] conviction record has already been litigated at several levels of the state court system and decided in respondent's favor. At all prior proceedings involving this question, complainant [A] received the protection accorded a convicted criminal. We should bow to the extensive fact-finding, within the context of a criminal appeal, of our state courts on this issue.

Therefore, because petitioner has failed to present any evidence that the Office of Disciplinary Counsel's case differs materially from the claims extensively exhausted by [A] we conclude that respondent's conduct was not in violation of any Disciplinary Rules.

## DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determined that the charges against respondent be dismissed.

Mr. Keller and Dr. Gilbert did not participate in the adjudication.

## ORDER

MUNDY, *Chairman* — And now, December 13, 1989, upon consideration of the report and recommendation of Hearing Committee [   ] filed August 28, 1989; it is hereby ordered that the charges filed against [respondent], docketed at No. 93 D.B. 87, be dismissed.